UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANK JOSEPH CASCIO,

        Plaintiff,

v.                                    Case No. 8:20-cv-387-NPM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff Frank Cascio seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, the parties filed a Joint Memorandum (Doc. 22), and with the Court's leave Cascio filed a reply brief (Doc. 23). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically

---

[1] Cited as "Tr." followed by the appropriate page number.

determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits someone's exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when someone's functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

Cascio is sixty years old. (Tr. 67, 81, 180). He received a J.D. and L.L.M. Cascio was an attorney for the U.S. Army, and after he retired in 2017, he briefly worked as a permit coordinator. (Tr. 38-41, 205). On June 6, 2018, Cascio applied for disability insurance benefits. (Tr. 10, 66, 80, 180). Cascio asserted a disability onset date of March 25, 2018, due to the following: right hip strain chronic pain;

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

arthritis; lumbosacral strain degenerative arthritis; right lower radiculopathy chronic pain; lateral collateral ligament sprain chronic pain; left knee strain chronic pain left lower radiculopathy; gastroesophageal reflux disease; gout; shoulder impingement syndrome osteoarthritis right side; migraines; high blood pressure/hypertension; carpal tunnel syndrome bilateral; major depression; post-traumatic stress disorder ("PTSD"); and anxiety. (Tr. 67-68, 81-82).

Cascio's application was administratively denied initially on August 21, 2018, and upon reconsideration on December 28, 2018. (Tr. 66-78, 80-93). At Cascio's request, Administrative Law Judge Elving L. Torres held a hearing on August 14, 2019. (Tr. 34-65, 110, 134). The ALJ issued an unfavorable decision on November 13, 2019, finding Cascio not disabled from March 25, 2018, through the date of the decision. (Tr. 7-20).

Cascio's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Cascio then filed a Complaint on February 20, 2020 (Doc. 1), and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Docs. 15, 19).

### C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

3

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Cascio met the insured status requirements through December 31, 2023. (Tr. 12). At step one of the evaluation, the ALJ found Cascio had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). At step two, the ALJ characterized Cascio's severe impairments as: obesity; cervical spine degenerative changes; lumbar spine degenerative disease; bilateral hip osteoarthritis; migraines; ascending aortic aneurysm; hypertension; and diabetes mellitus. (Tr. 12). At step three, the ALJ determined Cascio did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 15).

As a predicate to step four, the ALJ arrived at the following RFC:

The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a), except he can no more than occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb long vertical ladders, scaffolds, or ropes or at [sic] open unprotected heights. He must avoid extreme vibration, extreme loud noise, and extreme bright lights such as strobe lights and spotlights. He cannot operate dangerous machinery. He can occasionally reach overhead with the right upper extremity.

(Tr. 15).

At step four, relying on the testimony of the vocational expert, the ALJ found Cascio was capable of performing past relevant work as an attorney (DOT[5] 110.107-014 and DOT 110.107-010) and a permit coordinator/human resources assistant (DOT 219.362-010). (Tr. 19-20). Since the ALJ found Cascio could perform past relevant work, he did not proceed to step five.

## II.   Analysis

Cascio's appeal presents the following issues:

(1)   whether substantial evidence supports the ALJ's finding that Cascio's medically determinable mental impairments are not severe and resulted in no mental limitations in Cascio's ability to work;

(2)   whether the ALJ properly considered the opinion of Dr. Foster; and

(3)   whether the ALJ properly evaluated Cascio's subjective statements.

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled—with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

(Doc. 22, pp. 13, 17, 34).

## A.   Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963

F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

> **B. Whether substantial evidence supports the ALJ's finding that Cascio's medically determinable mental impairments are not severe and resulted in no mental limitations in Cascio's ability to work.**

Cascio argues that his depression, PTSD, and anxiety are severe rather than non-severe impairments. (Doc. 22, pp. 13-16). And he further argues the ALJ should have included corresponding mental limitations in the RFC and in hypothetical questions to the vocational expert. (Doc. 22, pp. 14-15). While the finding that Cascio's mental impairments were not severe is supported by substantial evidence, the failure to expressly account for these impairments when formulating the RFC is reversible error.

### 1. Severity of Cascio's mental impairments at step two

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'"

*D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted). In other words, as long as the ALJ considered Cascio's severe impairments in combination with his non-severe impairments any potential error at step two is harmless. *See id*.

At step two, the ALJ found anxiety, PTSD, and depression were medically determinable impairments that did not rise to the "severe" level because they did not cause more than a minimal limitation in Cascio's ability to perform basic mental work activities. (Tr. 13). In so finding, the ALJ considered four broad areas of mental functioning, known as the "paragraph B" criteria. (Tr. 13-15); 20 C.F.R.

9

§ 404.1520a(c)(3). These four broad areas consist of: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

If the ALJ finds that the degree of limitation in these areas of functioning is "none" or "mild," he will generally conclude that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Here, the ALJ found that Cascio had mild limitations in all four areas of mental functioning. (Tr. 13-14).

To support these findings, the ALJ first cited to a function report that Cascio completed before he started his medication. (Tr. 13 n.1 (citing Tr. 216-223, 784-894)). While Cascio alleges that he is unable to concentrate, has difficulty following instructions, and has difficulty with change and stress, he conceded in the function report that he is able to take care of his personal needs, he prepares simple meals, he does light housework, he drives, he shops, he can manage his finances, he reads and watches television, he spends time with family but he is less social, and he gets along with authority figures. (Tr. 13, 216-223). So, the ALJ concluded Cascio has not reported significant limitations. (Tr. 13).

The ALJ further cited to medical records indicating that Cascio complained of anxiety and depression related to marital problems (Tr. 622-636); attended five counseling sessions in 2018 (Tr. 655-656); and was observed to be pleasant and cooperative with logical thought process, euthymic mood, good recall, and no hallucinations (Tr. 829-830). While acknowledging that Cascio was diagnosed with major depressive disorder and PTSD (*e.g.*, Tr. 804, 830, 837), the ALJ noted Cascio's PTSD was related to childhood abuse, and that it did not prevent him from completing law school and having a successful military career (Tr. 14 n.1). Cascio also had a porn addiction. (Tr. 14, 804, 860). While Cascio was not previously taking psychotropic medications before a July 30, 2018 doctor's visit, he was at that time prescribed sertraline to help with depression and curb some of his sexual cravings (Tr. 821, 831-833). (Tr. 14). The sertraline improved his symptoms but caused headaches, so he switched to escitalopram. (Tr. 14, 801, 809-810, 925, 948-949, 962). The ALJ noted Cascio's mental status examination remained normal and his dose was increased at his request. (Tr. 14, 925, 949, 953).

Finally, the ALJ relied on the opinions of the state agency psychological consultants. (Tr. 14). These consultants determined that Cascio's mental impairments caused no more than mild limitations and are non-severe. The ALJ found their opinions persuasive because they are consistent with Cascio's treatment

notes showing that the medications were effective, and they are supported by Cascio's normal mental status examinations. (Tr. 14).

The ALJ cited substantial evidence to support his mild findings and his conclusion that Cascio's mental impairments were non-severe at step two. And any step two error would be harmless if the ALJ properly proceeded through the sequential process. However, as discussed below, the ALJ failed to do so.

### 2. *Deficient RFC assessment*

Before step four, the ALJ must assess the claimant's residual functional capacity, which is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). So, the ALJ must consider *all* of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

Instructive on this point is the recent decision in *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-1270 (11th Cir. 2019). There, the Eleventh Circuit

remanded the case to the Commissioner, in part, because, "[s]evere or not, the ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so." *Id.* at 1269. In his RFC assessment, the ALJ discussed Schink's physical impairments at length, but only mentioned that he had bipolar disorder without any real discussion of how this impairment affected the claimant's ability to work. *Id.*

Even assuming the ALJ considered Schink's mental impairments by implicitly finding they posed no significant limitations on his work-related mental impairments, the Eleventh Circuit still found an affirmance inappropriate. This is because an ALJ's "'failure ... to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id.* (citation omitted). And just as in *Schink*, the ALJ here explained at step two that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 14); *Schink*, 935 F.3d at 1269. And the ALJs in both *Schink* and here acknowledged that the "mental residual functional capacity assessment used at steps 4 and 5 … ***requires a more detailed assessment***." (Tr. 14) (emphasis added); *Schink*, 935 F.3d at 1269.

13

Whether severe or not, the ALJ was required to explicitly consider Cascio's mental impairments when assessing the RFC but failed to do so. In sum, the ALJ failed to expressly construct a logical bridge between his finding that Cascio had mild impairments in all four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work.[6]

## C.    Cascio's remaining arguments

Cascio's remaining issues focus on whether the ALJ properly evaluated Dr. Foster's opinion and Cascio's subjective complaints. Because the Court finds that remand is warranted on the RFC issue, the Court need not address the other arguments raised by Cascio. *See Francis v. Saul*, No. 8:18-cv-2492-T-SPF, 2020 WL 1227589, *4 (M.D. Fla. Mar. 13, 2020) (citing *Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings); *Bekiempis v. Colvin*, No. 8:16-cv-192-T-27TGW, 2017 WL 459198, *5 (M.D. Fla. Jan. 17, 2017)

---

[6] The Commissioner argues at length that step two and step four opinions are separate. (Doc. 22, p. 32). Here, the ALJ explained why the implied finding of "severe" in the psychological consult report from Timothy Foster, Ph.D., was not persuasive, yet the ALJ did not explain why any of Dr. Foster's functional limitation opinions were not persuasive.

14

(finding it appropriate to pretermit discussion of two other contentions raised by claimant in light of a remand, which would generate a new decision)).

## III.    Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the decision of the Commissioner is not supported by substantial evidence.

It is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on September 23, 2021.

Nicholas P. Mizell

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

15